CARMEL CREDIT UNION vs. ALLEN BONDESON & another.[1]

No. 00-P-191.

Middlesex. March 15, 2002. - August 9, 2002.

Present: DUFFLY, KASS, & TRAINOR, JJ.

*Mortgage,* Acceleration clause. *Notice,* Foreclosure of mortgage. *Real Property,* Mortgage.

A mortgage lender who established that it sent notice conformably with G. L. c. 244, § 17B, was not required to prove that a borrower actually received the notice before holding the borrower liable, after mortgage foreclosure, for a deficiency on the mortgage note. [559-562]

CIVIL ACTION commenced in the Superior Court Department on March 20, 1996.

The case was heard by *Margot Botsford,* J., on motions for summary judgment, and entry of final judgment was ordered by *Diane M. Kottmyer,* J.

*Robert H. D'Auria* for the defendants.

*Susan E. Stenger* for the plaintiff.

KASS, J. In May, 1995, Allen and Karen Bondeson began to miss monthly payments due on a mortgage note of $159,000 that they had given to the Carmel Credit Union (credit union) on September 15, 1987. Their default on the mortgage note triggered a default on a mortgage of real property at 133-139 Ennell Street in Lowell.

We may jump over the work-out efforts that followed the initial defaults. On February 16, 1996, the credit union began foreclosure proceedings. The only question on appeal is whether a mortgage lender must prove that the borrower actually received the notice that G. L. c. 244, § 17B, requires a lender to give if it proposes to hold the borrower liable, after mortgage

---

[1] Karen Bondeson.

foreclosure, for a deficiency on the mortgage note. We decide, as did the Superior Court judge who heard the matter on a motion for partial summary judgment,[2] that if a lender establishes that it sent notice conformably with G. L. c. 244, § 17B, that lender is not required to prove that the borrower received the notice.

Section 17B provides that the holder of a mortgage note may not bring an action for a deficiency after a mortgage foreclosure sale unless it has, not less than twenty-one days before the foreclosure sale, sent written notice to the person to be charged with the deficiency. The notice, which must contain a warning of liability for the deficiency, is to be sent by registered mail, with return receipt requested, to persons whom the mortgagee proposes to charge with a deficiency. Within thirty days after the foreclosure sale, the mortgagee is required to make an affidavit that the requisite notice was mailed. There are appended to the statute forms of the required notice letter and affidavit, which the mortgagee is to follow "substantially." See G. L. c. 244, § 17B.[3]

*Facts.* We set out some additional material facts that the parties do not dispute. On August 16, 1996, the credit union mailed

---

[2]Although the motion had been for *partial* summary judgment, the parties agreed that the judge's action, as a practical matter, was dispositive, because it established liability and the parties had agreed on damages. Accordingly, the parties jointly moved under Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), for entry of final judgment. That motion was allowed.

[3]So far as relevant, the statute specifies the following:

"No action for a deficiency shall be brought . . . unless a notice in writing of the mortgagee's intention to foreclose the mortgage has been mailed, postage prepaid, by registered mail with return receipt requested, to the defendant . . . at his last address then known to the mortgagee, together with a warning of liability for the deficiency, in substantially the form below, not less than twenty-one days before the date of the sale under the power in the mortgage, and an affidavit has been signed and sworn to, within thirty days after the foreclosure sale, of the mailing of such notice. A notice mailed as aforesaid shall be a sufficient notice, and such an affidavit . . . shall be prima facie evidence . . . of the mailing of such notice. The notice and affidavit, respectively, shall be in substantially the . . . forms [prescribed in the remainder of the section]."

G. L. c. 244, § 17B. Compliance with the statutory forms of notice and affidavit is not challenged in this appeal.

by certified mail, return receipt requested, a notice to the Bondesons that conformed with G. L. c. 244, § 17B; i.e., it followed the statutory format and was mailed to the last address of the Bondesons known to the credit union.[4] As to both Allen and Karen Bondeson, the credit union received a return receipt acknowledging delivery of the notice letter on August 20, 1996. The signature on each receipt was that of Susan Taddeo, a next-door neighbor of the Bondesons. She signed the receipt in the space labeled "Signature — (Agent)." The affidavit that the statute required was timely made by the credit union. For purposes of summary judgment only, the credit union has agreed that the notice letters were not placed in the hands of the Bondesons by Taddeo; i.e., the Bondesons did not receive the statutory notice sent to them. At the foreclosure sale, the Credit Union bought the property and then sold it for $81,400. That amount was subtracted from the balance of unpaid interest and principal due on the note, leaving a deficiency of $90,517.60. Again for purposes of summary judgment analysis, we are to assume that the Bondesons, who attended the foreclosure sale, would have bid more aggressively or otherwise stimulated interest in the property had they been aware that they faced a deficiency judgment.

*Discussion.* The core of the Bondesons' argument is that it is not enough for a mortgagee to prove it has sent notice to a debtor in strict conformity within G. L. c. 244, § 17B. If, their argument continues, the statute is to achieve its purpose of protecting parties who may become liable for a mortgage note deficiency, *Framingham Sav. Bank* v. *Turk*, 40 Mass. App. Ct. 384, 386 (1996), it must mean that the mortgagor-debtor actually receives the statutory notice, otherwise the statutory remedy is illusory.

The first difficulty with that argument is that the statute prescribes in great detail how notice shall be *given*; it does not provide that the mortgagee must prove that the notice was

[4]Under G. L. c. 4, § 7, Forty-fourth, " 'Registered mail', when used with reference to the sending of notice . . . shall include certified mail." See *Durkin* v. *Siegel*, 340 Mass. 445, 448 n.4 (1960), which observes that registered mail and certified mail have essentially the same safeguards and advantages for ensuring the delivery of a required notice.

received. As we observed in *Framingham Sav. Bank* v. *Turk, supra* at 387, the statutory language of § 17B "is more than ordinarily prescriptive." Familiar canons of statutory interpretation boom powerfully against the Bondeson position. Courts interpret a statute in accordance with its plain words. *Massachusetts Community College Council MTA/NEA* v. *Labor Relations Commn.*, 402 Mass. 352, 354 (1988). They may not add words to a statute that the Legislature did not put there. *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999). Such prohibitions aside, we are not at all tempted to add to the statute as the Bondesons propose. As written, the statute is a practical measure which, in the great run of cases, will result in the necessary information about potential liability for a deficiency reaching mortgage debtors. Requiring that the mortgage debtor actually receive the notice would pile unreasonable difficulty on the party charged with giving notice. After receiving the certified mail return receipt, is the mortgagee to follow up with a telephone call to the mortgage debtor to make sure she has received the letter? Must the mortgagee then verify that the person who answered the telephone is who she said she was? Notice by certified or registered mail is a common method of providing notice in business, governmental, and legal contexts and is considered "reasonably calculated" to provide actual notice. *Andover* v. *State Financial Servs., Inc.*, 432 Mass. 571, 574-575 (2000).

The Bondesons rely primarily on *Mutual Bank for Sav.* v. *Silverman*, 13 Mass. App. Ct. 1059 (1982), to support their position that implicit in § 17B is a requirement that the debtor-mortgagor actually receive the statutory notice. In that case, a bank brought an action for deficiencies and moved for summary judgment, in part on the basis of having given the notice required by G. L. c. 244, § 17B. The debtor filed an affidavit that it had not received the § 17B notice, and the court commented that the affidavit raised "an issue of material fact as to whether the notice was received." *Mutual Bank for Sav.* v. *Silverman, supra* at 1061. Although the quoted passage implies a § 17B notice must be received, there is no discussion in the opinion about whether the statute so requires, and to conclude that the opinion so held may well be reading into it something that is not there.

In *Hull* v. *Attleboro Sav. Bank*, 25 Mass. App. Ct. 960, 963, cert. denied, 488 U.S. 856 (1988), we considered a statute, G. L. c. 244, § 14, with a similar mechanism, i.e., registered mail notice of a foreclosure sale to the owners of the equity of redemption, and wrote that if the bank showed that it had complied with the notice statute, the debtor's averment that he had not received the notice was "irrelevant to the issue whether the bank had satisfied its obligation in accordance with the statute." In *Framingham Sav. Bank* v. *Turk*, 40 Mass. App. Ct. at 386-387, the bank argued that it should be forgiven for failing to comply meticulously with G. L. c. 244, § 17B, because the mortgage debtors had actual notice of the bank's intention to look to them for any deficiency. We held that adherence to the statutory procedure was a prerequisite to maintaining an action for a deficiency, "unfettered by assertions of actual notice, and the evidentiary complications attendant on proving whether unwritten notice was given, was received, was understandable as a declaration of intention to pursue a deficiency judgment, and was reasonably understood as such." *Framingham Sav. Bank* v. *Turk*, supra at 386. See *Bead Portfolio, LLC* v. *Follayttar*, 47 Mass. App. Ct. 533, 534 (1999) (even if debtor had actual notice, substantial deviation from requirements of § 17B would preclude creditor's recovery). Conversely, when a mortgagee has adhered to the statutory prescriptions for notice, it ought not to be fettered by assertions of nonreceipt.

In *Pemstein* v. *Stimpson*, 36 Mass. App. Ct. 283, 286-287 (1994), we commented that when the requirements of G. L. c. 244, §§ 11-17B, governing foreclosure of real estate mortgages, have been adhered to, the Massachusetts cases have generally regarded that as satisfying the fiduciary duty of the mortgagee to the borrower, absent fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process. To the extent that the opinion in *Mutual Bank for Sav.* v. *Silverman*, supra, can be read to require proof of receipt of a § 17B notice, we overrule it. We concur with the conclusion of the motion judge that § 17B "does not demand that the mortgagee ensure or prove . . . actual receipt of the notice by the party to be charged."

The Bondesons have thrown in the hopper arguments that

considerations of equity and constitutional due process required actual receipt by them of notice of liability for a deficiency. Due process in this case was satisfied by the procedure prescribed in G. L. c. 244, § 17B. See *Andover* v. *State Financial Servs., Inc.*, 432 Mass. at 574-575. The weight of equitable considerations favors the credit union because, apart from the § 17B notice, the Bondesons had earlier, by March 27, 1996, received notice of the complaint that the credit union had filed against them to foreclose the mortgage. In that complaint, and an accompanying affidavit, the credit union asked for an attachment on other real property owned by the Bondesons on the ground that sale of the premises might not satisfy the mortgage note debt.

*Judgment affirmed.*